# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1061-17T3
                    A-1062-17T3

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

      Plaintiff-Respondent,

v.

A.B.G.,

      Defendant-Appellant,

and

A.K.H. and T.S.,

      Defendants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.H.,
E.L.G. and M.N.G.,

      Minors.

_____

Submitted December 11, 2018 – Decided  January 15, 2019

Before Judges Hoffman, Suter and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0244-15.

Joseph E. Krakora, Public Defender, attorney for appellant (Charles S. Rosenberg, Designated Counsel, on the brief; Patricia A. Nichols, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Diane L. Scott, Deputy Attorney General, and Lisa J. Rusciano, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Karen A. Lodeserto, Designated Counsel, on the brief).

PER CURIAM

Defendant A.B.G. (Anna) appeals the October 13, 2017 order of the Family Part that found the Division of Child Protection and Permanency (Division) complied with the notice requirements of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 to 1963, and based on evidence presented at the remand proceedings, that Anna's children are not "Indian children" within the meaning of the ICWA. Anna contends the court's order was erroneous because the Division did not use active efforts or due diligence to verify, through relevant Indian tribes, the children's Native American heritage nor allow the tribes a

A-1061-17T3

sufficient time to respond. We are satisfied the Family Part judge did not err in its order that the ICWA does not apply to these children or in terminating the litigation.

I.

Anna is the mother of three children: A.H. (Abby) born in 2005, E.L.G. (Evan) born in 2006, and M.N.G. (Matt) born in 2007. A.K.H. (Allen) is Abby and Evan's father. Matt's father is T.S. (Tim).

On April 26, 2016, Anna, Allen and Tim's parental rights were terminated by a judgment of guardianship entered under N.J.S.A. 30:4C-15.1(a) following a trial. Anna and Allen appealed the guardianship judgment. In July 2017, we issued an unpublished opinion that affirmed the judgment in part and remanded it in part for further proceedings consistent with our opinion. See N.J. Div. of Child Prot. & Permanency v. A.K.H., Nos. A-3684-15 and A-3711-15 (App. Div. July 19, 2017). The case is now before us following remand proceedings conducted by the Family Part from which Anna appeals.[1]

---

[1] Allen has not appealed the Family Part's October 13, 2017 order entered after remand.

A.

In our July 2017 opinion, we agreed with the Family Part that the statutory requirements to terminate Anna's parental rights had been satisfied by clear and convincing evidence. In concluding that Anna's parental relationship with her children endangered their safety, health or development, N.J.S.A. 30:4C-15.1(a)(1), we stated:

> Anna was suffering from a substance abuse problem, which was not resolved. She had lost her housing and was not employed. She had not been able to overcome her alcohol addiction and this negatively affected her relationship with the children, who distrusted her. Once she relapsed in 2014, she rarely visited with the children and did not contact the Division. [This] . . . inconsistency in her visits caused "distress in the children who already appear to be separating from her." Anna offered no expert testimony that her relationship with the children was undermined by anything other than her own conduct.
>
> [A.K.H., (slip op. at 15).]

Our prior opinion concluded Anna was unwilling or unable to eliminate the harms facing her children. Id. at 20; See N.J.S.A. 30:4C-15.1(a)(2). We stated:

> that the Division proved prong two by clear and convincing evidence. Anna only completed successfully one substance abuse treatment program, and was discharged from many others in which she was enrolled. She did not rebut [the Division's expert's] conclusion that she was unable to parent the children

4

because of her unresolved substance abuse issues. She remained largely out of contact with the Division and the children. Anna presented no expert testimony that her recovery was "hampered" by the suspension of her visitation with the children.

> [A.K.H., (slip op. at 16-17).]

We were satisfied as well that the Division had made reasonable efforts to provide services to the parents. Id. at 17-18; See N.J.S.A. 30:4C-15.1(a)(3).

> Anna was provided with multiple psychological evaluations, "a substance abuse evaluation, multiple referrals for substance abuse treatment[,] . . . transportation assistance, supervised visitation, therapeutic visitation, [and] unsupervised, overnight visitation." She was provided with a parenting aide during unsupervised visitation.
>
> . . . .
>
> The record does not support Anna's allegation on appeal that visitation was suspended improperly. Rather, the record supports that it was suspended because of her lack of cooperation with services and loss of contact with the Division.
>
> [A.K.H., (slip op. at 18-19).]

We agreed with the trial judge that termination of parental rights would not do more harm than good. Id. at 19-21; See N.J.S.A. 30:4C-15.1(a).

> [T]he trial court's conclusion that termination of Anna's parental rights would not do more harm than good was supported by the testimony of [the Division's expert],

5

who reached this opinion based on Anna's lack of relationship with the children in the last year before trial and their expression that they did not want to live with her. The children are bonded with the resource parent who also wants to adopt them. They do not recognize Anna as their psychological parent.

[A.K.H., (slip op. at 20).]

We concluded that the parental rights of Anna and Allen should be terminated provided that the children are not "Indian children" under the ICWA. Id. at 21.

B.

When Anna appealed the guardianship judgment in 2017, she alleged for the first time that the judgment violated the ICWA. Our July 2017 opinion explained:

Anna initially asserted the ICWA did not apply to her. However, her amended birth certificate provided:

Mixture of English, Negro, and Indian blood. Indian can be traced from my grandmother, Willie Ann Ellison, born in Lauderdale County, Mississippi, in the 1860s. My mother, born same place, 1913, August Rush. Grandfather is Mose Rush, born same place, about 1870.

On March 8, 2016, the Division sent certified letters to the BIA[2] and the Department of the Interior to determine whether the ICWA applied to this

---

2 The reference is to the Federal Bureau of Indian Affairs (BIA).

A-1061-17T3

proceeding. On March 29, 2016, the BIA responded that it did not maintain such information and advised the Division to obtain it "from the tribe itself, if tribal affiliation can be determined."

On April 8, 2016, the Division sent a letter to the eight federally recognized Apache tribes, advising them of Anna's amended birth certificate. Five tribes responded after the guardianship trial was completed and indicated that Anna and the children were not eligible for tribal membership. Neither the BIA nor the tribes requested additional information.

Post-termination orders included in the supplemented record, which were entered in proceedings conducted under docket numbers FC-07-159-13, FC-07-160-15 and FC-07-162-13, determined that the ICWA did not apply to Anna's children. Anna, however, was not a party to those proceedings.

[Id. at 23-25.]

Anna claimed in the 2017 appeal that the "the Division had an obligation affirmatively to contact other tribes based on census data from 1880 and 1910 involving two of the relatives identified in the amended birth certificate." Id. at 25. We concluded:

[t]he Division's notices to the BIA and the Apache tribes did not include all the information required by the regulations. Specifically, the notices did not include the children's birthplace, Anna's former addresses, aliases or birthplace, or any information about the fathers. 25 C.F.R. § 23.11(d)(1), (3) (2014). The amended birth certificate gave limited information

7

about ancestors. 25 C.F.R. § 23.11(d)(3) (2014). A copy of the guardianship complaint was not included. 25 C.F.R. § 23.11(d)(4) (2014). The notice did not say the case involved termination of parental rights, the phone number of the court was omitted, and the notice did not advise the tribes they could ask to transfer jurisdiction. See 25 C.F.R. § 23.11(e) (2014). Although the regulation required the notice to provide only such information as is known, the Division did not say that all or some of these items were unknown.

[Id. at 26.]

We could not say that the "additional information required by the regulation might not have prompted further inquiry" even though none of the responding tribes asked for "additional information" and there was no "new information" about the children's Indian heritage. Id. at 27.

We directed that "[t]he Division is to send new notices consistent with the applicable regulation." Ibid. (citing 25 C.F.R. § 23.111 (2016)). Further, "the Division . . . should make efforts to identify if other tribes should be notified, and then to provide them with notices compliant with the regulation." Ibid. The notices were to be sent "forthwith." Ibid. We made clear the limited nature of our remand.[3]

---

[3] In a footnote, we noted that Allen did not appeal the ICWA issue but "to the extent a judgment of guardianship requires termination or surrender of both parents' rights, his are implicated." Id. at 28, n. 14.

The guardianship judgments shall be deemed affirmed after service of conforming notice if: (1) no tribe responds to the notices within the time provided under the ICWA; (2) no tribe determines within the time allotted under the ICWA that the children are Indian children defined by the ICWA; or (3) the court determines, after the tribes have been given an opportunity to intervene, that the ICWA does not apply. If the children or any one of them is determined to be an Indian child under the ICWA, the judgment terminating Anna's parental rights shall be vacated and further proceedings consistent with the ICWA should be held . . . . These proceedings shall be expedited.

[Id. at 27-28.]

### C.

The remand proceedings spanned five separate hearing dates in 2018. Anna testified about her address, telephone number, birth date, birthplace, aliases, married names, her parents' names, dates of birth, birthplaces, addresses, phone numbers, her family history, information listed on her amended birth certificate, and other relevant information pertaining to her heritage. She said she had additional "papers [at] home" regarding her relatives and "a document . . . saying that they found [her] Tribe." Anna testified her Indian ancestors were on her father's side, but she did not have with her the names and phone numbers of those relatives who may have additional information. Anna's counsel advised there were two "federally recognized Tribes in Mississippi" that had not been

A-1061-17T3

notified by the Division. The court ordered Anna to provide all of the information that she referenced to the Division.

Anna's counsel advised the court that Tim also may have Indian heritage. Anna provided his aunt's name and phone number, because she was "the only person that [would] know all of the background." The court denied Anna's requests to stay the remand proceedings or to invalidate the guardianship judgment under 25 U.S.C. § 1914.

The Division drafted a new notice to be sent to various tribes; Anna's counsel requested additional time to review the notice. The court ordered Anna to supply the information she had referenced during her testimony and if she did not, to bar her from relying on information she had not supplied. The trial court clarified that the burden to comply with the ICWA remained with the Division. Anna's counsel sent written objections to the notices and provided additional information regarding Anna's and Tim's ancestry.

The Division sent ICWA notices to the BIA and twenty-three tribes between August 31 and September 5, 2017. These notices said the Division was "pursuing a termination of parental rights cause of action . . . in a matter of alleged Indian affiliation," and that pursuant to federal law, the Tribe had a right to intervene if it were determined that the children were "Indian children" under

the ICWA. The notice included a copy of the protective service and guardianship complaints that contained the name and phone number of the court.

The judge again denied motions by Anna's counsel to invalidate the guardianship judgment under 25 U.S.C. § 1914, or to reverse it under Rule 4:50-1 and for psychiatric and bonding evaluations. It denied Anna's counsel's request for access to the Division's case file that he intended to review "in order to support [his] previous motion" for reversal of the guardianship judgment.

On October 13, 2017, the Division advised the court that it sent the notices to the BIA and twenty-three Indian Tribes. Most tribes responded that the children were not members of their tribe and they would not be intervening. A few other tribes did not respond, but the Division supplied the court with copies of the certified mailing and receipt information to show those tribes had received the letter. Anna's counsel objected to the form of the notice, its contents, and the Division's request to the court to find that it had complied with the ICWA. The Family Part judge rejected these arguments finding:

> I'm satisfied based on representations that appropriate notices were mailed to these Tribes. And the Tribes have had their opportunity to intercede or advise or seek additional time.
>
> . . . .

It's clear to me the record's reflected all the evidence, returned receipts and/or responses of the Tribes themselves, satisfy me. As a matter of fact, that the Tribes have been noticed.

. . . .

And I do find based on the evidence that is before me that the children and parents are not members or eligible to be members of a Native American Indian Tribe. And therefore, ICWA does not apply in this case.

D.

On appeal, defendant raises the following issues:

I. THE COURT ERRONEOUSLY DETERMINED THAT ABBY, EVAN, AND MATT WERE NOT INDIAN CHILDREN AS DEFINED BY ICWA.

A. DCPP Failed to Use Active Efforts To Work With The Tribes To Verify If The Child May Be Eligible For Membership.

B. DCPP Failed to Use Due Diligence To Work With The Tribes To Verify If The Child May Be Eligible For Membership.

C. The Court Did Not Provide Ample Opportunity For BIA and the Indian Tribes to Respond to the Notices They Received and DCPP Did Not Take The Appropriate Steps To Follow Up On Tribes That Did Not Respond.

12

II. THE COURT LACKED SUFFICIENT EVIDENCE
TO REJECT [ANNA'S] MOTION TO INVALIDATE
THE TERMINATION OF HER PARENTAL RIGHTS
PURSUANT TO 25 U.S.C. §1914 OR REVERSE THE
TERMINATION OF HER PARENTAL RIGHTS
PURSUANT TO Rule 4:50-1.

>A. The Court Incorrectly Rejected Anna's
>Motion to Reverse the Termination of Her
>Parental Rights Pursuant to Rule 4:50-1.

>B. The Court Incorrectly Rejected Anna's
>Motion to Invalidate the Termination of
>Her Parental Rights Pursuant to 25 U.S.C.
>§1914.

We do not find merit in these arguments.

II.

A.

We note our general deference to Family Part judges' fact-finding because of their "special jurisdiction and expertise in family matters." Cesare v. Cesare, 154 N.J. 394, 413 (1998). See also N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014). We will uphold fact-finding that is supported by sufficient, substantial and credible evidence in the record. See N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010); N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007). However, we will not hesitate to set aside a ruling that is "so wide of the mark that a mistake must have been

13

made." M.M., 189 N.J. at 279 (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). The court's interpretation of the law or its legal conclusions are reviewed de novo. See State in Interest of A.B., 219 N.J. 542, 554-55 (2014).

B.

In our prior opinion, we discussed the ICWA as it applies to cases involving termination of parental rights.

> In order to preserve the "continued existence and integrity of Indian tribes," [Matter of the Adoption of a Child of Indian Heritage, 111 N.J. 155, 166 (1988)], "tribes have a right to intervene" in a court proceeding involving termination of parental rights. [N.J. Div. of Child Prot. & Permanency v. K.T.D., 439 N.J. Super. 363, 369 (App. Div. 2015)]. To facilitate exercise of the right, the ICWA requires notice. Ibid. (discussing 25 U.S.C. § 1912(a)). The obligation to give notice is triggered when "a state court knows or has reason to know that the child involved is an 'Indian child.'" Ibid.
>
> A child is an "Indian child" when the child is either: "(a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). "Tribes have different criteria" to determine who can be a member and have "exclusive authority" over that determination. K.T.D., 439 N.J. Super. at 369-70.
>
> Under the regulations in effect at the time of the guardianship trial, the Division, as the "party seeking"

14

termination, was obligated, if known, to "directly notify the Indian parents, Indian custodians, and the child's tribe by certified mail with return receipt requested, of the pending proceedings and of their right of intervention." 25 C.F.R. § 23.11(a) (2014).

[A.K.H., (slip op. at 21-23).]

We noted that 25 C.F.R. § 23.11 was revised in December 2016. As revised, it provides "[n]otice must be sent by registered or certified mail with return receipt requested." 25 C.F.R. § 23.111(c) (2016). Notice must be in "clear and understandable language" and include:

> (1) The child's name, birthdate, and birthplace;
>
> (2) All names known (including maiden, married, and former names or aliases) of the parents, the parents' birthdates and birthplaces, and Tribal enrollment numbers if known;
>
> (3) If known, the names, birthdates, birthplaces, and Tribal enrollment information of other direct lineal ancestors of the child, such as grandparents;
>
> (4) The name of each Indian Tribe in which the child is a member (or may be eligible for membership if a biological parent is a member);
>
> (5) A copy of the petition, complaint, or other document by which the child-custody proceeding was initiated and, if a hearing has been scheduled, information on the date, time, and location of the hearing;
>
> (6) Statements setting out:

(i) The name of the petitioner and the name and address of petitioner's attorney;

(ii) The right of any parent or Indian custodian of the child, if not already a party to the child-custody proceeding, to intervene in the proceedings.

(iii) The Indian Tribe's right to intervene at any time in a State-court proceeding for the foster-care placement of or termination of parental rights to an Indian child.

(iv) That, if the child's parent or Indian custodian is unable to afford counsel based on a determination of indigency by the court, the parent or Indian custodian has the right to court-appointed counsel.

(v) The right to be granted, upon request, up to [twenty] additional days to prepare for the child-custody proceedings.

(vi) The right of the parent or Indian custodian and the Indian child's Tribe to petition the court for transfer of the foster-care-placement or termination-of-parental-rights proceeding to Tribal court as provided by 25 U.S.C. § 1911 and § 23.115.

(vii) The mailing addresses and telephone numbers of the court and information related to all parties to the child-custody proceeding and individuals notified under this section.

(vii) The potential legal consequences of the child-custody proceedings on the future parental

16

and custodial rights of the parent or Indian custodian.

(ix) That all parties notified must keep confidential the information contained in the notice and the notice should not be handled by anyone not needing the information to exercise rights under ICWA.

[25 C.F.R. § 23.111(d) (2016).]

"If the identity or location of the child's parents, the child's Indian custodian, or the Tribes in which the Indian child is a member or eligible for membership cannot be ascertained, but there is 'reason to know'[4] the child is an

---

[4] "Reason to know" is defined in 25 C.F.R. 23.107(c). It states:

(c) A court, upon conducting the inquiry required in paragraph (a) of this section, has reason to know that a child involved in an emergency or child-custody proceeding is an Indian child if:
(1) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that the child is an Indian child;
(2) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child;
(3) The child who is the subject of the proceeding gives the court reason to know he or she is an Indian child;

Indian child, notice of the child-custody proceeding must be sent to the [BIA]."

25 C.F.R. § 23.111 (2016).

"The BIA has issued Guidelines to assist in interpreting the ICWA."

K.T.D., 439 N.J. Super. at 371.[5]  As much information as is known regarding

the child's direct lineal ancestors should be provided.  Id. at 373 (citing 25 C.F.R.

§ 23.11(b) (2016)).  State agencies and courts "should ask the parent and,

potentially, extended family what Tribe or Tribal ancestral group the parent may

be affiliated with."  Guidelines, Section B.4.

---

(4) The court is informed that the domicile or residence of the child, the child's parent, or the child's Indian custodian is on a reservation or in an Alaska Native village;
(5) The court is informed that the child is or has been a ward of a Tribal court; or
(6) The court is informed that either parent or the child possesses an identification card indicating membership in an Indian Tribe.

[5]  See Guidelines for Implementing The Indian Child Welfare Act, 81 Fed. Reg. 96,476 (Dec. 30, 2016), https://www.bia.gov/sites/bia.gov/files/assets/bia/ois/pdf/idc2-056831.pdf (Guidelines).

## C.

Defendant raises a host of issues about the efforts made by the Division on remand to identify if the children are subject to the ICWA. We are satisfied the notices conformed with our limited remand and that the Division's efforts satisfied our direction.

We agree with the Family Part judge that the notices provided the information required by the regulations. The notices were sent by certified mail with return receipt requested. 25 C.F.R. § 23.111(c) (2016). They were written "in clear and understandable language," and explained that the Division was pursuing a termination of parental rights case. The notices included: the children's names, birthdates, and birthplaces; all names known (including maiden, married, and former names or aliases) of the parents, the parents' birthdates and birthplaces, and known current and former addresses; all known names (including maiden, married, and former names or aliases), birthdates, and birthplaces of the children's direct lineal ancestors; and the names of Indian Tribes in which the children were potential members. 25 C.F.R. § 23.111(d)(1) to (4) (2016). The notices also included: contact information for the trial court, the Division, parent's counsel, and children's counsel; and statements advising the Tribe of its rights to intervene, to have court-appointed counsel, to request

A-1061-17T3

an additional twenty days to prepare for the proceedings, and to transfer the matter to Tribal court. 25 C.F.R. § 23.111(d)(6)(i) to (vi) (2016). Copies of the protective services and guardianship complaints, and the name and phone number of the court that had jurisdiction also were included. 25 C.F.R. § 23.111(d)(5) (2016).

The Division was not required to provide a complete family history as long as it provided all "known" information. 25 C.F.R. § 23.111 (2016). The Division was not "required" to "research any vital statistics records to obtain the birth and death dates/locations or any of the other information about the [children's] ancestors." Anna's reliance on N.J. Div. of Child Prot. and Permanency v. K.T.D., No. A-4205-14 (App. Div. Jan. 19, 2016) (K.T.D. II) is misplaced. Not only is our opinion in K.T.D. II unpublished, but in that case the Division had information the child might be eligible to be a member of one of three Cherokee Tribes recognized by the federal government, as well as another unspecified Tribe, but did not follow up on this. K.T.D. II, slip op. at 2-3.

Here, unlike K.T.D., the Division utilized all information readily available. The Division did not fail to obtain relevant information or withhold known information from the Tribes or BIA. Also, 25 U.S.C. § 23.111 does not

20

require DCPP to obtain death dates. Anna's counsel simply speculated that contact with Lauderdale County Chancery Court's division of vital records might have yielded additional information.

We also agree that the Division satisfied the regulatory requirement to use due diligence:

> to identify and work with all of the Tribes of which there is reason to know the child may be a member (or eligible for membership), to verify whether the child is in fact a member (or a biological parent is a member and the child is eligible for membership).
>
> [25 C.F.R. § 23.107 (2016).]

The Division used the information obtained from Anna's birth certificate, in-court testimony and her counsel regarding Anna and Tim's ancestry and an out-of-court discussion with Allen to identify the tribes to be contacted and to draft the notices. The tribes were able to determine, based on the information provided, that the children were not members. Some tribes invited additional information if it were known but Anna does not suggest there was additional information about Native American relatives that was not supplied to the tribes already. Thus, we agree with the Family Part judge that relevant tribes were notified and that the responses were sufficient to find these children were not "Indian children" within the meaning of the ICWA.

A-1061-17T3

We are satisfied that Anna had the opportunity to review the letters. They were drafted and provided on more than one occasion for review. Counsel had the ability to comment extensively. The record also showed the court complied with ICWA time requirements for notice. The notices were sent from August 31 to September 5, 2017. The court's decision was not made until October 13, 2017.

Defendant contends the letters should have been uniform with all the tribal information on one sheet. There is no such requirement in the regulations.

III.

We decline to address other issues raised by Anna that were beyond the scope of our remand. For instance, Anna filed motions before the Family Part judge to reopen the judgment of guardianship under Rule 4:50-1, although she acknowledged having no new information. Anna had hoped to "discover" information post judgment, through psychological or bonding evaluations and by reviewing the Division's records, even though our opinion affirmed the termination of parental rights if the children were not "Indian children" under the ICWA. Our remand was limited to the ICWA issue as the Family Part judge correctly held.

A-1061-17T3

This case is not like In re Guardianship of J.N.H., 172 N.J. 440, 474 (2002) that is relied on by Anna. In J.N.H., the Court was willing to consider vacating a judgment that terminated parental rights based on a "unique" "confluence of events," which included evidence of rehabilitation by the parent whose rights were terminated and the child who was not doing well in foster placement. J.N.H., 172 N.J. at 479. In the present case, there was no evidence of any changed circumstances or problems with the children's placement. Anna entered a rehabilitation program but did not show completion of the program. There was no evidence the children's placement was problematic in any way. The caseworker testified the children were doing well in placement.

Anna argues the trial court violated the ICWA by not proceeding as if the children were Indian children. Anna contends that termination of her parental rights should be invalidated. We agree with the Family Part that our remand was limited and clear. We already concluded that if the children were not Indian children under the ICWA, then the termination of Anna's parental rights (and the father's as well) was affirmed. The issues raised now to challenge the guardianship were decided by the underlying appeal prior to remand. The trial court had no ability to invalidate the guardianship judgment once it resolved the ICWA issue.

A-1061-17T3

After carefully reviewing the record and the applicable legal principles, we conclude that defendant's further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1061-17T3