# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1218-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

V.H.-R.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF V.H.
and P.H.,

     Minors.

_____

Argued July 9, 2019 – Decided July 26, 2019

Before Judges Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0062-17.

Adrienne Marie Kalosieh, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Robyn A. Veasey, Deputy Public Defender, of counsel; Adrienne Marie Kalosieh, on the briefs).

Peter Damian Alvino, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jason Wade Rockwell, Assistant Attorney General, of counsel; Natasha C. Fitzsimmons, Deputy Attorney General, on the brief).

Danielle Ruiz, Designated Counsel, argued the cause for minors (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Danielle Ruiz, on the brief).

PER CURIAM

Following a two-day guardianship trial, defendant V.H.-R. (Father) seeks reversal of the trial court's decision terminating his parental rights to his two children, eight-year-old V.H. (Vernon)[1] and six-year-old P.H. (Phoebe).[2]  In May 2016, the Division of Child Protection and Permanency (the Division) removed the children from their parents' custody because of allegations of neglect.  The children presently live with their paternal grandmother (PGM).  The court-approved permanency plan for the children provides for PGM to adopt

---

[1]  We use pseudonyms to protect the identities of the parties.  R. 1:38-3(d)(12).

[2]  Defendant E.S. (Mother) did not appeal the termination of her parental rights.

the children. The Law Guardian for the children supports that plan, and joins the Division in urging us to affirm the trial court's decision.

For the reasons that follow, we affirm the trial court's determination that the Division satisfied its burden of proof at trial regarding the first two prongs of the termination statute, N.J.S.A. 30:4C-15.1(a), as to both parents. However, we vacate the guardianship judgment and remand this case with respect to prongs three and four of the statute, for the trial court to: (1) develop the trial record with more clarity as to whether PGM unequivocally, unambiguously, and unconditionally wishes to adopt the children in her care, regardless of the potential alternative of Kinship Legal Guardianship (KLG); and (2) make explicit findings addressing KLG as it relates to the feasibility of adoption and the unequivocal consent of PGM to adoption. In all other respects, we uphold the trial court's otherwise well-founded and well-reasoned decision.

I

The guardianship trial took place in August 2018. The Division presented documentary evidence and testimony from one caseworker and one expert witness, Dr. Frank Dyer, a psychologist. The caseworker described the Division's involvement with the family dating back to 2013. She detailed, consistent with the Division's records, the efforts to maintain contact with Father

and outlined the substance abuse treatment, visitation, and other services the Division attempted to provide to him over the years and his failure to comply.

The parties stipulated to Dr. Dyer's credentials and the court qualified him as an expert in psychology. The court also received Dr. Dyer's report into evidence without objection. Father reported serving in the military for four years, from ages seventeen to twenty-one, including one year in Iraq. Father "related that he currently receives a disability check from the Veteran's Administration for [post-traumatic stress disorder]. He indicated he receives $2000 per month."

Consistent with his written report, Dr. Dyer testified that Father was prone to mood instability and unstable interpersonal relationships. Dr. Dyer explained that Father remained at risk of destabilized mental health, which could be triggered by stopping his medications, continued cannabis use, housing and employment stress, or the stress of daily parenting. Dr. Dyer also expounded on the particular risk of command hallucinations, experienced by Father in 2015, "in which the patient hallucinates voices, and these voices tell the patient to commit some act."

Dr. Dyer agreed that Vernon and Phoebe's adoption by PGM was in their best interests. Dr. Dyer based this conclusion on the attachment that Vernon

and Phoebe have with PGM, and her commitment to ongoing contact with their birth parents, which would provide the children the "best of both worlds" by having a relationship with their parents, but not relying on them to meet their day-to-day needs.

Father did not testify or call any witnesses, and introduced only one document, which contained the definitions of the Division's intake findings. Mother did not appear at trial and did not introduce any evidence. The Law Guardian supported the Division's application for termination of parental rights and did not offer any evidence.

II

The scope of an appellate court's review of a trial court's decision to terminate parental rights is limited. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). "Appellate courts must defer to a trial judge's findings of fact if supported by adequate, substantial, and credible evidence in the record." Ibid. Reviewing courts "accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012).

A-1218-18T1

As a threshold matter, New Jersey courts "are guided by the principle that 'clearly favors keeping children with their natural parents and resolving care and custody problems within the family.'" N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 165 (2010) (quoting In re Guardianship of J.C., 129 N.J. 1, 7-8 (1992)). Parents have a fundamental constitutional right to raise their children. F.M., 211 N.J. at 447. That right is not, however, absolute and is "tempered by the State's parens patriae responsibility to protect children whose vulnerable lives or psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent." Ibid.

"The focus of a termination-of-parental-rights hearing is the best interests of the child." Ibid. The statutory best-interests-of-the-child standard, set forth in N.J.S.A. 30:4C-15.1(a), "aims to achieve the appropriate balance between parental rights and the State's parens patriae responsibility." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 280 (2007). Under that standard, to justify termination of parental rights, the Division must prove by clear and convincing evidence that termination is in the child's best interests. Ibid.

Specifically, the Division must establish:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights;

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a).]

The third prong of the best-interests-of-the-child standard, in addition to evaluating the efforts of the Division in providing services to the parents, requires that the court consider alternatives to the termination of parental rights. See N.J.S.A. 30:4C-15.1(a)(3). Under prong three, an alternative to termination is KLG, which allows a relative to become the legal guardian, committed to care for the child until adulthood, without stripping parental rights. N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 508 (2004). KLG resulted from the Legislature's realization "that an increasing number of children who cannot safely reside with their parents are in the care of a relative or family friend who

does not wish to adopt the child or children." N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 222-23 (2010). See N.J.S.A. 3B:12A-1(a) to (b).

In P.P., our Supreme Court, while acknowledging the benefits of KLG, emphasized "New Jersey's strong public policy in favor of permanency." 180 N.J. at 510 (quoting In re Guardianship of K.H.O., 161 N.J. 337, 357 (1999)). The Court explained that KLG is available "as a more permanent option than foster care when adoption 'is neither feasible nor likely' and '[KLG] is in the child's best interests.'" Id. at 512 (quoting N.J.S.A. 3B:12A-6(d)(3) to (4)). But when the permanency provided by adoption is available, KLG cannot be used as a defense to termination of parental rights. N.J. Div. of Youth and Family Servs. v. D.H., 398 N.J. Super. 333, 341 (App. Div. 2008) (holding that KLG is not available when adoption is feasible or likely). Indeed, we have recognized that when a caretaker "unequivocally" asserts a desire to adopt, the standard to impose a KLG arrangement that adoption is neither feasible nor likely, cannot be satisfied. N.J. Div. of Youth & Family Servs. v. T.I., 423 N.J. Super. 127, 130 (App. Div. 2011).

In N.J. Div. of Child Prot. & Permanency v. M.M., ___ N.J. Super. ___, (App. Div. 2019) (slip op. at *16), we recently held,

> The decision of a resource parent to choose adoption over KLG must be an informed one. . . .

A-1218-18T1

The Legislature has made it clear that relative caretakers who might be candidates for KLG must be adequately informed of the nature of such arrangements and the financial and other services for which they may be eligible.

To accomplish this objective, the Legislature enacted the Kinship Legal Guardianship Notification Act (the KLG Notification Act), N.J.S.A. 30:4C-89 to -92, in 2005.

The Legislature enacted the KLG Notification Act "to ensure that individuals who may be eligible to become kinship legal guardians are aware of the eligibility requirements for, and the responsibilities of, kinship legal guardianship and . . . [also] the services available to kinship legal guardians in the State."  N.J.S.A. 30:4C-90(e).  To accomplish this goal, the Division shall, in easily understandable language:

> a. inform individuals, of whom the department is aware, who may be eligible to become kinship legal guardians of:
>
> > (1) the eligibility requirements for, and the responsibilities of, kinship legal guardianship; and
> >
> > (2) the full-range of services for which kinship legal guardians may be eligible and the eligibility requirements for those services; and
>
> b. inform current kinship legal guardians of the full-range of services for which kinship legal guardians may be eligible and the eligibility requirements for those services.

9

[N.J.S.A. 30:4C-91.]

As we explained in M.M.,

> A logical implication of the Notification Act is that the caregiver must be fully informed of the potential benefits and burdens of KLG before deciding whether he or she wishes to adopt. Once he or she is provided with that comparative information, the caretaker's preference between the two alternatives should matter. [slip op. at *18-19]

### III

At trial, the Division presented limited evidence on the issue of alternatives to termination of parental rights. The case worker testified that every conversation with PGM was documented in the record. The Division's policy manual requires that, contemporaneous with a caregiver's signing acknowledgement forms, the case worker, "[t]horoughly document the details of each Worker-kin discussion . . . ."[3] Inexplicably, the record does not contain any contact sheets detailing any conversation with PGM about KLG. The caseworker testified, "I don't know if the discussion were [sic] had or not. But according to the fact sheet that—I'm not—I can't answer that. Sorry."

---

[3] New Jersey Department of Children and Families Policy Manual, CP&P Form 4-18(S), Fact Sheet - Acknowledgement of Receipt - Differences Between Adoption and KLG, https://www.state.nj.us/dcf/policy_manuals/CPP-X-A-1-4.18(S).pdf.

Nevertheless, the record does show PGM's interest in KLG, as reflected in an April 2017 contact sheet:

> It was discussed that PGM had expressed an interest in KLG during a conversation with caseworker, and that a permanency hearing is scheduled for 5/11/17. (It had previously been determined that the proposed permanency goal would be termination of parental rights at this hearing). It was decided that supervisor would send [Child Welfare Services] an email requesting that the concurrent planning specialist meet with PGM to review KLG vs Adoption.

The Division argues that "there was no indication that the Division was unwilling to change its plan if [PGM] indeed preferred KLG." Yet, the contemporaneous contact sheet states:

> Worker informed [PGM and her husband] that the case goal is adoption. Worker asked [PGM and her husband] if they were committed to adopting [P.H. and V.H.] and both replied yes. Worker asked [PGM and her husband] if they received material regarding KLG vs. adoption. [PGM and her husband] reported that they received information about KLG and adoption. Worker showed them the KLG vs. Adoption fact sheet and asked if they have received or saw this fact sheet before and they both replied yes.

Father argues persuasively that this contact sheet may have documented an interrogation, but not a "discussion" and, most importantly, does not indicate any willingness on the part of the Division to change its permanency plan.

11

The record of consent to adoption here, "the case goal is adoption. . . . [Are you] committed to adopting," essentially mirrors what was before this court in N.J. Div. of Youth & Fam. Servs. v. D.H., 398 N.J. Super. 333, 337 (2008) (noting the grandmother's not wanting to terminate and stating, "I really don't want to give [the child] to anybody else[;] I'm happy, she's happy"). In that case, we disapproved the trial court telling a grandparent, "It's a statement of fact that there are various options that exist, one of which is termination of parental rights so the child can be adopted, whether it's by you or somebody else." Ibid.

The Division asks this court to treat an event that appears to condition the children's placement with PGM on her agreement to adopt as a "discussion," yet the Division records document little more than what the PGM may have viewed as fait accompli: adopt or we will find someone who will. We agree with Father that the inquiry contemplated by N.J.S.A. 30:4C-15.1(a)(3) requires more.

The Division and the Law Guardian both argue that KLG was unavailable in this matter because an adoption is "feasible and likely," relying on our decision in N.J. Div. of Youth & Fam. Servs. v. T.I., 423 N.J. Super. 127, 130 (2011) (the "neither feasible nor likely" clause required for a KLG cannot be met "when a caregiver in a case brought by [the Division] unequivocally asserts a desire to adopt"). We reject this argument because the record here lacks clear

12

and convincing evidence of such an unequivocal assertion. The caseworker testified that PGM and her husband "would adopt or and [sic] are committed to adopting [Vernon and Phoebe] if termination of parental rights were to occur;" however, this does not show an unequivocal preference for adoption.

We agree with Father that the trial court engaged in a truncated analysis of this point by ruling out KLG on the sole factor that adoption, in the event of a termination, would be feasible and likely. A conditional preference does not constitute the legal equivalent of an unequivocal one. See M.M., slip op. at *8 (caregivers' statements that they would adopt if parental rights were terminated was not a true expression of a preference for adoption over KLG, requiring a remand).

The record also contains a paucity of evidence regarding whether the Division adequately informed PGM of the financial and other services she could receive under a KLG. Of note, Father reported receiving $2000 per month in disability benefits. The record does not reflect what support or benefits the PGM could receive related to Father's disability under a KLG arrangement. If termination of Father's parental rights stands, the rights of Vernon and Phoebe to receive support from the Father would cease, along with other potential

benefits, such as their rights of inheritance and rights to receive dependency and survivorship benefits. See N.J.S.A. 9:3-50.[4]

Based on our review of the record and the trial court's opinion, we are unable to conclude that the trial judge correctly determined that the Division properly considered alternatives to terminating Father's parental rights. We offer no comment as to the sufficiency of the proofs submitted at the guardianship trial on that issue. The purpose of our remand is to permit the trial court in the first instance to assess the evidence already presented, or conduct additional proceedings as the court deems appropriate, and issue supplemental findings and conclusions on the limited issue of whether the Division appropriately considered alternatives to termination, and whether the Division satisfied its obligation to provide PGM all relevant information regarding KLG, as required by the KLG Notification Act.

---

[4] N.J.S.A. 9:3-50 (c) provides, in pertinent part:

> The entry of a judgment of adoption shall:
>
> (1) terminate all parental rights and responsibilities of the parent towards the adoptive child . . . ;
>
> (2) terminate all rights of inheritance under intestacy from or through the parent unless that parent is the spouse of the petitioner or that parent or other relative had died prior to the judgment of adoption . . . .

14

We defer to the discretion of the trial court as to the appropriate forms of proof at the remand hearing. Of course, if PGM is willing to testify, we presume the trial court would welcome such evidence. We also defer to the trial court's discretion whether any supplemental expert reports and testimony are appropriate to address these subjects, considering the passage of time and any interim developments.

The remand proceedings shall be completed within ninety days, unless that deadline is reasonably extended further by the trial court, with the consent of all counsel. We do not retain jurisdiction. Any party may pursue a new appeal from the outcome of the remand. The trial court shall address any issues of interim visitation or contact.

Father's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, and vacated and remanded, in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION