# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1406-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

 Plaintiff-Respondent,

v.

J.Y.,

 Defendant-Appellant,

_____

IN THE KINSHIP MATTER OF
J.T., a Minor.

_____

APPROVED FOR PUBLICATION

May 4, 2021

APPELLATE DIVISION

Submitted March 9, 2021 – Decided May 4, 2021

Before Judges Fisher, Moynihan and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FL-09-0156-10.

Joseph E. Krakora, Public Defender, attorney for appellant (Mark E. Kleiman, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Amanda D. Barba, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Louise M. Cho, Assistant Deputy Public Defender, of counsel and on the brief).

The opinion of the court was delivered by

MOYNIHAN, J.A.D.

Defendant J.Y. appeals from the trial court's order denying in part his motion to change a previously-established, court-ordered parenting time/visitation schedule with his daughter, J.T. (Jada),[1] and to vacate a kinship legal guardianship (KLG) judgment entered on June 15, 2010, appointing J.J.-C. (Jessye), a maternal relative, as Jada's KLG guardian.[2] On appeal, defendant argues:

> POINT I
>
> BECAUSE THE COURT FAILED TO FOLLOW THE PROCEDURES MANDATED BY TITLES 9 AND 30, ITS ORDER LIMITING [DEFENDANT'S] CONTACT WITH HIS DAUGHTER [JADA] WAS IMPROPER AS A MATTER OF LAW AND VIOLATED HIS FUNDAMENTAL PARENTAL RIGHTS AS WELL AS HIS RIGHT TO DUE PROCESS, AND MUST THEREFORE BE VACATED.

---

[1] We use pseudonyms for the parties and the child to protect their privacy, preserve the confidentiality of the proceedings and for the reader's convenience.

[2] Jada had been placed with Jessye in June 2009.

POINT II

[DEFENDANT] WAS NOT A PARTY TO THE KLG PROCEEDINGS AND IS NOT BOUND BY THE KLG ORDER, AND THEREFORE THE COURT'S USE OF THAT ORDER AS RES JUDICATA SUPPORTING PREEMPTION OF [DEFENDANT'S] RIGHT TO VISITATION WAS IMPROPER AS A MATTER OF LAW.

We reverse and remand.

The only thing clear from the record of the last hearing, before the order under review was entered, is the confusion regarding the applications before the trial court partly engendered by the procedural history of this case.

Defendant was not a specified party to the KLG action that was instituted after the Division removed Jada under the Dodd Act[3] shortly after her birth in February 2007, because her mother's disabilities rendered her unable to care for her daughter. Although the Division asked Jada's mother, S.T. (Sasha), who had fathered Jada, she said she knew the man only as "Jay"; she did not know his surname or how long their relationship had lasted. A Division caseworker testified at the KLG hearing that Jada's father was "unknown" in that Sasha was unable to provide his name.

---

[3] N.J.S.A. 9:6-8.21 to -8.82.

A-1406-19

After a DNA test confirmed his paternity, defendant's first application for custody or visitation was denied as unsupported in 2016. Although defendant knew Sasha was pregnant, he was incarcerated until Jada was eight or nine years old. He made a second application for visitation in September 2018. The trial court denied that request but amended the KLG judgment to allow defendant to "make [one] phone call to [Jada] either on Friday after [4:00 p.m.] or on Saturday"; and, if Jada felt "comfortable," to begin correspondence with her. The November 2018 order also provided: "Any contact with [defendant] shall be only if [Jada] wishes."

Seven months later, while still imprisoned, defendant sought a video-conference visit with Jada through a parole board office, prompting Jessye to testify at the June 13, 2019 motion hearing that defendant had violated the court's prior order by calling Jada more than once per week and at varied hours, and that defendant had provided Jessye's phone number to his family members who called or texted. Jada's law guardian told the court Jada said that speaking with defendant had become easier, but she was still uncomfortable—even afraid—when they spoke, and that she did not want to visit her father in prison or participate in the video conference. The trial court dismissed defendant's application in light of Jada's refusal, reasoning:

> The . . . law involving kinship legal guardianship is
> that it's really the kinship legal guardian that makes

A-1406-19

the decisions. While parents can apply for visitation, [having] been informed by the [l]aw [g]uardian and the kinship legal guardian that this [twelve-year-old] child does not want to go to a prison to see her father and does not want to participate in a video conference with her father. She is willing to exchange letters, which I think is the best way for you to go about communicating with her, because sometimes it's easier through letters than on the phone. Phone calls can be awkward, I would think, when you're calling from a prison, when she may be in the middle of an activity, doing her homework, having a friend over.

I want to stress . . . one phone conversation a week, assuming she's willing. And if you are notified in writing by the [l]aw [g]uardian . . . that she no longer wants phone calls, you're going to have to respect that, because parents have many rights, but the rights of children always are more important.

This court is here to address the best interests of the child. This is a young girl who had a bumpy road in her life, because . . . in the beginning, she had no father. Her mother was unable to care for her. She's very fortunate to get a loving kinship legal guardian who has taken very good care of her, by all indications. And the [c]ourt's job is to protect her from being upset, from being emotionally traumatized by a man she never knew coming into her life, being in prison, and that I'm sure is not an easy situation for her. I think you're fortunate that she's willing to have a phone conversation occasionally and to correspond.

In August 2019, Jessye moved to end defendant's telephone visitation alleging he was having his nephew request Jada's photograph despite the trial court's prior prohibition and making false accusations to the Division about Jessye's interference with his telephone visitation and her care of Jada. At the August 22, 2019 hearing, defendant's transportation from prison could not be

completed. The trial court rescheduled the hearing and arranged to send defendant an application for a public defender. The court, nevertheless, took testimony from Jessye and issued an order, in anticipation of defendant's imminent release from prison, prohibiting: defendant from going within one mile of Jada's school or home; conveyance of Jada's photograph to defendant; and family members other than the previously approved nephew from calling or texting Jessye's home. The judge also scheduled an in-camera interview with Jada.

Three weeks later defendant filed the motion that occasioned the order under review. When defendant was finally produced for the motion hearing, his newly-appointed counsel expressed concern that she had received only defendant's motion, had met with her recently-released client in her office for a mere one-half hour, and had only a few phone conversations with him before he was released.

Counsel informed the trial court that during their most recent conversation, among "different things," defendant had told her he wanted: "agency supervised contact"; to establish a relationship with Jada now that he was no longer imprisoned; supervised visits; and his and Jada's psychological evaluations. He had also told counsel he wanted to file for custody, to which

counsel had responded that he would have to apply separately for representation on that application.

What followed was a farrago of brief testimony by defendant interrupted by interjections by all counsel—principally the law guardian—that left the proceeding rudderless. It was clear the trial court did not appreciate the scope of defendant's application. The court twice said it was an application for visitation—echoing the law guardian's stance—before ruling against defendant's request for records of the KLG proceedings to which he was not a party, stating it did not "think it[ was] necessary to go back to the records of the initial [KLG]. The [KLG] was appropriate." The court continued, "we're not going to undo the [KLG], because he may or may not have had notice then, because he never filed any papers. Okay? So that is history, that is res judicata." The court repeated, "[w]e are here on a visitation application and we already heard this issue." The court then synopsized its interview with Jada, including her wish not to meet with defendant, and added:

> It is admirable that [defendant] wants to step up and be recognized as the parent of [Jada], but [defendant] has to understand he's a stranger to her, she knows he's been incarcerated, she is very happy with her life right now and she does not wish to meet him. We addressed all of that at the last hearing. The provisions in the existing order from the last hearing remain in effect and I'm not hearing any new requests that I hadn't heard prior.

A-1406-19

So I will hear you, [defendant], but my strong inclination is this is the same issues (sic) all over again and they have already been adjudicated.

After hearing from defendant, the court ruled:

You asked for phone contact. I permitted phone contact with the understanding that if the child did not wish to speak to you, she did not have to. You caused anxiety to the household by calling through other people, by calling too frequently, and the child did not want to speak to you.

I have interviewed the child. She's been very clear. I found her in total possession of her understanding that if she wished to see you, she had a right, but she could not be forced. I ordered that there be no visitation, because the child didn't want it.

I repeat that all provisions of my past order are still in effect. The only addition I will make is that you may provide your telephone number to the [l]aw [g]uardian and the [l]aw [g]uardian will provide it to the young lady. If she wishes to call you, she will call you. Your application is -- your cross-motion is denied, because it's res judicata, we have addressed this and there's nothing new.

The ensuing colloquy among the trial court, defendant and his counsel made clear defendant, as set forth in his pro se motion, wanted to vacate the KLG judgment. The court determined "[t]hat motion has not been filed and it's an inappropriate motion . . . addressing the same issues we've addressed before[.]" The court ruled "any . . . application for custody, for visitation, to reopen the [KLG] is denied."

Defendant's counsel explained that when defendant had filed his motion, he had "checked a box on the pro se litigant form that indicates vacate [KLG] and he believes that that motion has not been heard." Defendant then confirmed that he wished to go forward with that motion. The law guardian asserted her belief that defendant sought only visitation. After the court clerk printed defendant's motion, the court acknowledged it was "an application to amend or vacate" the KLG judgment, but found: "This was not an application to vacate the [KLG], it was an application to be able to call, to, I think, in the four corners of the application, to be able to visit the child or call her."

Defendant, obviously upset with the ruling, stated that he wanted to "sign [his] rights over," amplifying: "The [court] won't give me the opportunity to be in her life by making [its] ruling. I shouldn't be a part of this child['s] life at all." Defendant became obstreperous when the court began taking testimony from Jessye and, after a recess requested by defendant's counsel, counsel told the court defendant wanted the KLG "reopened." The court concluded, "[t]hat was not the motion that was filed." The court ruled:

> I have explained several times today that the [c]ourt interviewed the child, the [l]aw [g]uardian has spoken with the child, and the child does not wish to see you. She is [twelve] years old. You were never in her life, you were in prison for years, she is aware of all of that. She was willing to talk to you on the telephone, but at this point you don't seem to understand or want

> to accept.  I am denying the application and as far as I'm concerned, this matter is closed.  Thank you.

Despite our usual deference to the trial court's fact findings that are rooted in its familiarity with the case, opportunity to make credibility judgments based on live testimony and expertise in family matters, Cesare v. Cesare, 154 N.J. 394, 411-13 (1998), we determine the court misapprehended both the nature of defendant's motion and the legal and procedural requirements attendant to that motion.

"The doctrine of res judicata 'contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation.'"  Culver v. Ins. Co. of N. Am., 115 N.J. 451, 460 (1989) (quoting Lubliner v. Bd. of Alcoholic Beverage Control, 33 N.J. 428, 435 (1960)).  Res judicata "precludes parties from relitigating substantially the same cause of action."  Ibid. (quoting Kram v. Kram, 94 N.J. Super. 539, 551 (Ch. Div.), rev'd on other grounds, 98 N.J. Super. 274 (App. Div. 1967), aff'd, 52 N.J. 545 (1968)).  "The application of [the] res judicata doctrine requires substantially similar or identical causes of action and issues, parties, and relief sought," ibid., as well as a "final judgment by a court . . . of competent jurisdiction," ibid. (quoting Charlie Brown of Chatham v. Bd. of Adjustment, 202 N.J. Super. 312, 327 (App. Div. 1985)).

In determining whether two causes of action are similar or the same, we are required to consider four factors:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.
>
> [Id. at 461-62 (citations omitted).]

Because defendant was not a party to the KLG action, and the proofs in that action related solely to Sasha, not defendant, the trial court erred in concluding res judicata precluded defendant from seeking to vacate the KLG judgment.

Indeed, even if defendant had been a party to that action, his parental rights would have been left intact. "Unlike a judgment terminating parental rights, KLG does not sever the legal relationship between the child and the parent." N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 558 (2014). "[T]he parent remains entitled to visitation and . . . also has the right to seek termination of the guardianship and a resumption of custody if . . . [he or] she is [later] able to provide a safe and secure home for the child." N.J. Div. of

Youth & Fam. Servs. v. S.V., 362 N.J. Super. 76, 87 (App. Div. 2003); see also R.G., 217 N.J. at 558; N.J.S.A. 3B:12A-6(e)(4).

But, as stated, defendant was not a party to the KLG action; his parental rights were not impacted by that action though his daughter's custody and care were entrusted to the KLG guardian. The statutory procedures for vacating a KLG judgment by a parent who was a party to the KLG action are, therefore, inapplicable here.

Pursuant to the pertinent portion of N.J.S.A. 3B:12A-6(f), a KLG judgment

> may be vacated by the court prior to the child's [eighteenth] birthday . . . in cases where there is an application to return the child to the parent, based upon clear and convincing evidence, the court finds that the parental incapacity or inability to care for the child that led to the original award of kinship legal guardianship is no longer the case and termination of kinship legal guardianship is in the child's best interests.

Defendant has never been adjudicated to be incapable of or incapacitated to care for Jada. He is not compelled to prove by clear and convincing evidence "both that [he] has overcome the incapacity or inability to care for the child that led to the original guardianship proceedings, and that termination of kinship legal guardianship is in the best interest of the child." N.J. Div. of

12

Youth & Fam. Servs. v. L.L., 201 N.J. 210, 214-15 (2010); see also N.J.S.A. 3B:12A-6(f).

There are two other statutory avenues for vacating a KLG judgment. Another portion of N.J.S.A. 3B:12A-6(f) permits a court to vacate a KLG judgment if it finds the "guardianship is no longer in the best interests of the child." See L.L., 201 N.J. at 224. And N.J.S.A. 3B:12A-6(g) allows the court to vacate such a judgment "if, based upon clear and convincing evidence, the court finds that the guardian failed or is unable, unavailable or unwilling to provide proper care and custody of the child, or that the guardianship is no longer in the child's best interests." See ibid.

The trial court did not consider the portion of defendant's motion that sought to vacate the KLG judgment. In his moving papers, defendant averred the KLG guardian blocked his calls to his daughter. The motion did not, as the trial court determined, involve only his request for visitation.

A motion to vacate a KLG judgment sets in motion a number of procedures. Under N.J.S.A. 3B:12A-6(f), where the Division has been involved, a trial court "when determining whether a child should be returned to a parent," can "refer a parent for an assessment prepared by the [D]ivision, in accordance with regulations adopted by the commissioner." The Court in L.L. determined "the Division is required to perform an assessment either when the

court requests one because of the Division's prior involvement or when the Division elects 'to take a position on the [parent's] motion.'" 201 N.J. at 224-25 (quoting N.J.A.C. 10:132A-3.5(a), (b)[4]).

Where, as here, the Division was involved in litigation involving Jada from its inception through the last hearing and has taken a position both in the Law Division and before this court, we expect that an assessment would be performed to aid the court in determining a motion to vacate the KLG judgment. In every scenario, the child's best interests are the paramount concern. That assessment is an important tool in determining those interests. See Kinsella v. Kinsella, 150 N.J. 276, 317 (1997) (holding a best interests "analysis requires the court to consider any and all material evidence"). Indeed, the Kinsella Court recognized courts' heavy reliance "on the expertise of psychologists and other mental health professionals" in determining a child's best interests. Id. at 318.

The Court in L.L. also explained that the factors to be considered by the Division in determining whether to take a position on a motion to vacate a KLG judgment are also apt considerations in a court's best-interests assessment. 201 N.J. at 228. The delineated factors are:

---

[4]  This regulation has been recodified as N.J.A.C. 3A:20-3.5(a), (b), but the provision is identical to the former regulation.

1. The child's age;
2. The duration of the Division's involvement with the child, prior to the granting of kinship legal guardianship;
3. The total length of time the child was in out-of-home placement;
4. The length of time the child has lived with the guardian, prior to and after the granting of kinship legal guardianship;
5. When kinship legal guardianship was granted;
6. What the original harm or risk of harm to the child was;
7. The parent's present fitness to care for the child;
8. Any subsequent allegations of abuse or neglect received by the Division and their findings; and
9. What plan is proposed for the child if the guardianship is vacated.

[N.J.A.C. 3A:20-3.6(a); see also L.L., 201 N.J. at 228. [5]]

The Court recognized this was not an exhaustive list. L.L., 201 N.J. at 228.

Other factors to be considered include:

> the child's wishes; the nature and quality of the parent-child relationship during the kinship legal guardianship; the future relationship anticipated between the child and the guardian; the preservation of sibling relationships; the practical impact of vacating the kinship legal guardianship on the child's day-to-day life (i.e. changes in school, community and friends); and any other relevant factor bearing on the best interests of the child.

> [Ibid.]

---

[5] The Court considered this regulation's predecessor—N.J.A.C. 10:132A-3.6(a)—the provisions of which are identical to N.J.A.C. 3A:20-3.6(a).

To be sure, many of these considerations apply to cases involving an application by a parent who was a party to a KLG action. But we see no reason why the same considerations—relating to the child's best interests—should not be considered where a non-party parent, with full parental rights, is seeking a relationship with a child who is in the care and custody of a KLG guardian.

In such cases, courts are compelled to consider the fundamental right of a parent to raise his or her biological children, Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O, 161 N.J. 337, 346-47 (1999), and the court's prior determination appointing a KLG guardian to act as "a caregiver who is willing to assume care of a child due to parental incapacity, with the intent to raise the child to adulthood, and who is appointed the kinship legal guardian of the child by the court," N.J.S.A. 3B:12A-2; see also L.L., 201 N.J. at 223, with "'the same rights, responsibilities and authority relating to the child as a birth parent,' subject to several expressed limitations," L.L., 201 N.J. at 223 (quoting N.J.S.A. 3B:12A-4(a)(1)).

We are compelled to remand this case for a different judge[6] to decide defendant's motion to vacate the KLG guardianship, considering the Court's

---

[6] We direct this matter be heard by a different judge because the trial court's oft-expressed views indicate it may have an entrenched commitment to its

guiding practices and principles. We do not know the present circumstances of Jada and defendant. Counsel for all parties should be allowed reasonable time to prepare relevant evidence to allow the trial court to properly assess the current situation of all those involved, most importantly Jada who is older than she was when interviewed by the trial court. See In re Guardianship of R., 155 N.J. Super. 186, 195-96 (App. Div. 1977). The evaluation by the Division should afford counsel a reasonable opportunity to marshal that evidence. Nevertheless, we expect an expeditious handling of this matter.

We also note defendant expressed a desire for supervised visitation and other measures to help him establish a relationship with the daughter he has never met but had never applied for those services under this or any other docket. Now that his counsel has ample time to confer with defendant, we urge all issues by presented during the remand hearings.

We fully recognize the trial court's proper concern for Jada's best interests in deciding defendant's application for visitation. See Wilke v. Culp, 196 N.J. Super. 487, 497 (App. Div. 1984) ("[A] primary concern in determining questions of visitation and custody is the best interests of the

findings, including its mistaken treatment of defendant's application to vacate the KLG judgment. See N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 617 (1986); R. 1:12-1(g).

child."). And the court properly considered defendant's conduct with respect to the court's previous orders.

But the court's consideration of Jessye's testimony during the hearings, which defendant was unable to attend because of transportation issues from prison, should not have been considered in determining visitation. Where a motion raises a question about visitation and the pertinent facts are disputed "or where a plenary hearing would assist the court in deciding on a visitation plan, such a hearing should be held." P.T. v. M.S., 325 N.J. Super. 193, 214 (App. Div. 1999); see also Fusco v. Fusco, 186 N.J. Super. 321, 327 (App. Div. 1982). That requires the presence and participation of all parties and their prepared counsel.

Furthermore, inasmuch as defendant has never met Jada yet still retains all parental rights, it is incumbent upon the trial court to consider measures that would foster those rights, including, if appropriate, therapeutic visitation, supervised visitation and psychological counseling. We leave any such determinations to the remand judge. After a full consideration of the evidence, that judge will be in the best position to determine Jada's best interests in light of defendant's rights, the status of his relationship with his daughter and any bond between Jada and Jessye.

18

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION