# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3041-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

M.W.,

      Defendant,

and

R.T.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF B.T.
and A.T,

      Minors.

_____

Submitted December 19, 2019 – Decided January 21, 2020

Before Judges Alvarez and Nugent.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FG-03-0015-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; James Daniel O'Kelley, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jessica Ann Downey, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Todd S. Wilson, Designated Counsel, on the brief).

PER CURIAM

On February 28, 2019, a Family Part judge terminated defendant R.T.'s parental rights in his two minor children, who are now approximately three and four years old. R.T. appeals,[1] contending the Division of Child Protection and Permanency (Division) failed to establish that no reasonable alternative to termination of his parental rights existed, and failed to make sufficient efforts

---

[1] The mother's parental rights were also terminated, however, she has not appealed.

to unify the family.[2]   Having considered R.T.'s contentions in light of the record and applicable legal principles, we affirm, substantially for the reasons stated by Judge Aimee R. Belgard.

The trial record establishes the following.   R.T., who is approximately fifty-five years old, began using drugs, including heroin and crack cocaine, at age thirteen.   He did not graduate from high school, has virtually no work history, and does not have a driver's license.   R.T. has been incarcerated for various offenses over the course of his adult life, and is currently serving a three-year sentence for aggravated assault.   His anticipated release date is in 2020.

When the Division investigated an early referral about the family, R.T. and the children and their mother, were staying in a motel room along with R.T.'s former paramour, with whom he has two autistic adult children.   Those children were there as well.   Hair follicle testing conducted at the time established that R.T. had been using cocaine.   R.T. has not followed Division recommendations for substance abuse treatment or other forms of therapy.   He is presently incarcerated in state prison, however, and has enrolled in Narcotics Anonymous, Alcoholics Anonymous, anger management courses, and daily lectures.

---

[2] In point three of his merits brief, R.T. also argued the Division failed to comply with the Indian Child Welfare Act of 1978, 25 U.S.C.A. §§ 1901-1963 (ICWA). The point was withdrawn in his reply brief.

A-3041-18T4

R.T.'s incarceration arose out of a stabbing incident; he was initially charged with attempted murder. The children's mother alleged around the time of the Dodd removal[3] in August 2017 that R.T. had not only beaten her, but threatened her with a knife.

All of the relative placements suggested by R.T. and the children's mother were ruled out. None of the family members appealed.

In November 2018, the children were returned to their original resource home, as that family expressed an interest in adoption. The initial placement with that resource family ended because they did not want to adopt at that time.

The Division attempted to bring the children to visit with their father in prison, but had to stop the visits because they were too distressing for the son. R.T. requested the daughter not be brought either, because he thought the trip was too long for her to make.

R.T.'s September 2018 psychological evaluation found he suffered from an impulse control disorder, personality disorder with anti-social, narcissistic, and avoidant traits. The psychologist also found he presented "a heightened risk for criminal recidivism, substance abuse relapse, unstable lifestyle, and

---

[3] A Dodd removal is an emergency removal of a child from the home without a court order, pursuant to the Dodd Act, N.J.S.A. 9:6-8.21 to -8.82. N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 26 n.11 (2011).

aggressive behaviors or attitudes." R.T.'s knowledge and understanding of parenting was "remarkably poor," and he showed little insight or awareness of the children's needs. In the psychologist's opinion, he could simply not be an independent caretaker of a minor child "within the foreseeable future, whether he is incarcerated or not." Only supervised contacts were recommended.

Unsurprisingly, since the children have not lived with their father since August 2017, they are not bonded with their father. They are, however, significantly bonded with their resource parents. If removed from their home, the children face the possibility of severe and enduring emotional and psychological harm.

R.T. testified at trial that the psychologist misconstrued or misstated what took place during the bonding evaluation. He also denied telling the therapist that he used drugs. R.T. also claimed that someone had told his son to call him "Bad Papa," and that the child had not done so on his own initiative.

The judge rendered an oral opinion from the bench, finding the Division established by clear and convincing evidence all four prongs of the best interests of the child test, N.J.S.A. 30:4C-15.1(a). She found the Division's witnesses to be credible, including the bonding expert, while R.T. was not.

5

The court observed the Division, though limited due to R.T.'s incarceration, still "worked with the various facilities where [R.T.] was housed in order to determine what services were available at the facilities for [him] to engage in."  In the judge's view, "the Division made all efforts it could by contacting these facilities and arranging for the services that it could during the term of [R.T.]'s ongoing incarceration."  R.T.'s bonding evaluations took place despite his imprisonment.

Furthermore, R.T. had no plans for employment, housing, or substance abuse treatment upon release from prison.  He offered no evidence to refute the proofs the Division presented with regard to his drug use as well as to acts of domestic violence.  R.T. offered no explanation for his failure to participate in the Division's recommended services.

The judge also found that the Division had made extensive efforts to provide services to the parents and offered alternatives to termination, but neither parent engaged in substance abuse treatment, other services, or accepted family preservation services.  By continuing to drive the children to visits with R.T. when he was first incarcerated, the Division did the best it could under the circumstances to preserve the relationship.

A-3041-18T4

Additionally, the Division explored the possibility of placing the children with other family members, but they were either unable or unwilling to take them. The children are currently in a home interested in adoption, not kinship legal guardianship (KLG). Kinship Legal Guardianship Act, N.J.S.A. 3B:12A-1 to -7.

Ultimately, the court found in accord with N.J.S.A. 30:4C-15.1(a)(4) that termination of parental rights would not do more harm than good because of the children's minimal bond with their father. On the other hand, the children were strongly bonded to their resource parents, and the severance of that bond "would result in severe emotional and psychological damage to the children."

On appeal, R.T. argues as follows:

> POINT I
> THE TRIAL COURT'S PRONG THREE CONCLUSION THAT NO ALTERNATIVES TO THE TERMINATION OF [R.T.'s] PARENTAL RIGHTS EXISTED WAS LEGALLY ERRONEOUS AND NOT BASED ON SUBSTANTIAL CREDIBLE EVIDENCE.
>
> A.   Clear and Convincing Evidence Establishing That The Resource Parents Were Committed To Adoption Was Not Proffered Below.
>
> B.   Resource Parents Are Entitled To Receive Accurate Information About Permanency Plans That Do Not Involve The Termination Of A Parent's Parental Rights.

POINT II
[THE DIVISION] FAILED TO MAKE REASONABLE EFFORTS TO REUNIFY [R.T.] AND HIS CHILDREN.

I.

Appellate review of a family court's decision to terminate parental rights is limited. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 278 (2007). We defer to the family court's credibility findings and factual determinations because it has specialized knowledge, as well as a better perspective than a reviewing court having observed the witnesses firsthand. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 427 (2012); Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988)).

The "best interests of the child" typically call for stability and permanency, which are favored over protracted efforts for reunification. See N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 484, 491-92 (App. Div. 2012). Due to the severity of termination and its effect on the parents' constitutional rights, however, the proceedings require satisfaction of very strict criteria. In re Guardianship of J.N.H., 172 N.J. 440, 471 (2002). In such cases, "[p]resumptions of parental unfitness may not be used in proceedings challenging parental rights and all doubts must be resolved against termination."

N.J. Div. of Youth & Family Servs. v. L.M., 430 N.J. Super. 428, 442 (App. Div. 2013) (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 606 (2007)). Thus, parental rights should be terminated "with caution and care, and only in those circumstances in which proof of parental unfitness is clear." F.M., 211 N.J. at 447.

Termination is warranted where the Division can meet by clear and convincing evidence the four statutory elements set out in N.J.S.A. 30:4C-15.1(a). The factors often overlap. M.M., 189 N.J. at 280 (quoting N.J. Div. of Youth & Family Servs. v. F.M., 375 N.J. Super. 235, 259 (App. Div. 2005)). The Division met the clear and convincing standard in this case.

## II.

R.T. claims the record is devoid of clear and convincing evidence establishing that the resource parents were committed to adoption, as opposed to KLG. To the contrary, the Division easily bore its burden of establishing clear and convincing evidence of both. See M.M., 189 N.J. at 280. According to the credible testimony of the worker and the psychologist, as well as the documentary evidence admitted at trial, the resource parents rejected KLG as an option, and wished only to adopt.

KLG is an option created by the Legislature for children who cannot safely reside with their parents and are in the care of a relative or family friend who does not wish to adopt. See N.J.S.A. 3B:12A-1(c); N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 222-23 (2010) (citing N.J.S.A. 3B:12A-1(a) to (b)). That is not the case here.

Initially the resource family did not wish to adopt, and therefore the children were transferred to a second resource home. But the children were returned to the first home when one of the children experienced adjustment problems in his new setting, and the first resource family decided it did want to adopt after all. Given the resource parents' statements to the bonding expert and the worker, there is no reason to doubt their intent—or to question whether the Division proved they wished to adopt. This point does not require additional discussion. See R. 2:11-3(e)(1)(E).

### III.

Clearly, R.T.'s incarceration complicated the Division's efforts at reunification and in providing services. But R.T. has no explanation for his failure to engage in services before he was imprisoned. After his incarceration, the Division ordered a psychological evaluation, a bonding evaluation, and continued to work with R.T. to coordinate visitation with his children. The

Division remained in contact with R.T.'s several facilities to ensure he was continuing to take classes.

Providing services to a parent in prison presents its own "unique challenges." N.J. Div. of Youth and Family Servs. v. R.G., 217 N.J. 527, 557 (2014). Notwithstanding, although "providing services to incarcerated persons is difficult and may be futile" and the Division may choose to focus its services on the primary caretaker, "the Division should not avoid providing services to all incarcerated persons, regardless of their seeming unwillingness to improve their parental fitness." Id. at 562.

R.T. cites to R.G. as support for his contention that the Division failed to make reasonable efforts to aid in reunification. In R.G., however, the court determined the Division only paid "cursory" attention to the incarcerated parent. The Division arranged psychological evaluations, for example, but never scheduled a bonding evaluation. 217 N.J. at 562.

"The diligence of [the Division]'s efforts on behalf of a parent is not measured by their success." In re Guardianship of D.M.H., 161 N.J. 365, 393 (1999). In addition to the services provided to the family before R.T.'s incarceration, the Division provided R.T. with visitation, psychological evaluations, and bonding evaluations following his incarceration, and remained

in contact while he was incarcerated. Thus, there is no evidence supporting R.T.'s allegation of lack of diligence on the Division's part in providing necessary services to him after incarceration.

IV.

These very young children are completely bonded to their current resource family that wishes to adopt. R.T.'s circumstances make him unable to parent his own children in the foreseeable future. The elements of N.J.S.A. 30:4C-15.1(a) have been met.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12