# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4577-18T2
            A-4578-18T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

M.M. and V.B.,

      Defendants-Appellants,

and

E.N.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF K.M.N.,
Z.B., Za.B., L.B., Zar.B., and
Z.U.B.,

      Minors.

_____

Submitted February 4, 2020 – Decided March 3, 2020

Before Judges Yannotti, Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0206-18.

Joseph E. Krakora, Public Defender, attorney for appellant M.M. (Robyn A. Veasey, Deputy Public Defender, of counsel; Andrew Robert Burroughs, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant V.B. (Robyn A. Veasey, Deputy Public Defender, of counsel; James Daniel O'Kelly, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Nancy P. Fratz, Assistant Deputy Public Defender, on the brief).

PER CURIAM

This Title 30 guardianship matter brought by the Division of Child Protection and Permanency (the Division) returns to our court following a limited remand we ordered in a published opinion issued on April 2, 2019. See N.J. Div. of Child Prot. & Permanency v. M.M., 459 N.J. Super. 246 (App. Div. 2019). In our opinion, we held the record contained sufficient evidence to support the trial court's findings that the Division met its burden on the first two

2

prongs of the termination statute, N.J.S.A. 30:4c-15.1(a); however, we remanded the case with respect to prongs three and four of the statute, finding the record "insufficiently clear" concerning the issues of adoption and the potential alternative of Kinship Legal Guardianship (KLG). Id. at 257.

On remand, the same judge who presided over the guardianship trial heard testimony from the two long-term caretakers[1] for the six children involved in this case. After both caretakers provided testimony confirming their intention to adopt the children in their respective care, notwithstanding their understanding of the availability of KLG, the judge reaffirmed her original determination to terminate parental rights. Defendants M.M. (the mother) and V.B. (the father) now appeal from that second judgment of guardianship. We affirm.

## I.

The Facts

We begin with a summary of the pertinent facts, which we presented in greater detail in our published opinion. Id. at 252-55. The mother is the

---

[1] The caretakers – the children's maternal grandmother and maternal great aunt – did not testify at the initial guardianship trial.

biological mother of seven children: X.M. (Xander),[2] born in 2008; K.M.N. (Kevin),[3] born in 2009; Z.B. (Zarah), born in 2011; Za.B. (Zena), born in 2013; L.B. (Larry), born in 2015; Zar.B. (Zadie), born in 2016; and Z.U.B. (Zelda), born in 2017.

The mother and the father are married to each other. He is the father of the mother's youngest five children (Zarah, Zena, Larry, Zadie, and Zelda). As of the time of the guardianship trial in 2018, the Division had been involved with the mother and her children for about eight years, and with the father for approximately six years. The Division initially removed Xander and Kevin from the mother's care in February 2010, after receiving reports that she left Kevin on his paternal relatives' porch unattended. Those two sons were temporarily returned to the mother's custody in October 2015. Meanwhile, Zarah, Zena, and Larry were born, and defendants married.

---

[2] D.B. is the father of Xander; in January 2017, the court placed Xander in his father's custody.

[3] Defendant E.N. is the father of Kevin; at the conclusion of the initial guardianship trial, the judge terminated E.N.'s parental rights as to Kevin. E.N. did not attend the trial nor did he appeal from the decision to terminate his parental rights.

In July 2016, the Division removed all of the children from defendants' care, after the mother tested positive for marijuana upon Zadie's birth, and caseworker interviews of the children raised concerns of physical abuse. The Division placed Kevin and Larry with their maternal grandmother, and placed Zarah, Zena, and Zadie with their maternal great aunt. In September 2017, the Division filed its guardianship complaint in this matter. That same month, the mother gave birth to Zelda, who the Division removed from defendants' care, placing her with her maternal grandmother and adding her to the guardianship proceedings in an amended complaint.

At the initial four-day trial, the Division presented substantial evidence reflecting defendants' significant struggles, which included their repeated marijuana use, unemployment, lack of stable housing, and inadequate supervision of their children, including an incident where Larry sustained second-degree burns from a radiator.

The trial judge noted the close bonds between the caretakers and the children in their respective homes and found they both want to adopt the children in their care. The judge found the termination of the parents' rights to enable such adoption was in the children's best interests.

A-4577-18T2

In our previous opinion, we affirmed the trial judge's decision regarding the first two prongs of the statute, N.J.S.A. 30:4C-15.1(a). Id. at 257. Regarding prongs three and four, we found the record deficient, and explained that "the factual record, which is based upon a series of somewhat inconsistent and conditional hearsay statements, is insufficiently clear with respect to issues concerning adopting and the potential alternatives of KLG." Ibid.

Specific to prong three, we found the record supported the trial judge's findings that the Division made "reasonable efforts" to provide services to both parents; however, we found the record inadequate as to the second clause of N.J.S.A. 30:4C-15.1(a)(3), that "the court has considered alternatives to termination of parental rights." Id. at 258. We acknowledged the caregivers should not function as the ultimate decision maker to the child's fate, but emphasized their preference was not categorically irrelevant. Id. at 263-64. We concluded their decision must be an informed decision and the trial record must contain evidence of "sufficient clarity and evidentiary reliability" of their intentions. Id. at 265.

Interpreting the Kinship Legal Guardianship Notification Act (the KLG Notification Act),[4] we held "the caregiver must be fully informed of the potential

_____

[4] N.J.S.A. 30:4C-89 to -92

benefits and burdens of KLG before deciding whether he or she wished to adopt. Once he or she is provided with that comparative information, the caretaker's preference between the two alternatives should matter." Id. at 262-63. We construed "the KLG statute and the Notification Act to make a caregiver's preference, if any, of KLG over adoption a relevant but not dispositive consideration. The caregiver's consent to adopt should be not only informed, but also unconditional, unambiguous, and unqualified." Id. at 264. As a result, we remanded the case for the trial court to:

> (1) [D]evelop the trial record with more clarity as to whether each resource parent unequivocally, unambiguously, and unconditionally wishes to adopt the children in her care, regardless of the potential alternative of [KLG]; and (2) obtain explicit findings by the trial court addressing KLG as it relates to the feasibility of adoption and the unequivocal consent of the resource parents to adoption.
>
> [Id. at 252.]

In all other respects, we upheld the trial judge's decision. Ibid. Additionally, we deferred "to the trial judge's discretion as to what forms of proof would be appropriate for the remand hearing." Id. at 275.

The Remand Proceedings

On May 23, 2019, the trial judge held the remand hearing. The Division presented testimony from the children's caretakers, who both confirmed their

awareness of KLG and their continued desire to adopt the respective children in their care.

When asked about her intentions regarding Larry, Kevin and Zelda, the maternal grandmother replied that she wants "to adopt them . . . I'm very sure. I'm solid on it." She said Division workers explained the differences between KLG and adoption to her and she had understood the difference "for a long time." She stated she is "very sure" she wants to adopt the children, rather than KLG. She understood she was free to refuse to adopt the children and recognized the Division would not remove the children under a KLG, unless it was to return them to their parents. After adoption, she has no intention of changing the children's names and expects to allow the children to have continued contact with their parents.

When asked about her intentions regarding Zarah, Zena, and Zadie, the maternal great aunt replied, "I'm committed to adopting them." She stated she understands the differences between adoption and KLG and gave the matter consideration. She denied the claim that she previously said she preferred KLG over adoption. She confirmed she spoke with a Division caseworker and her lawyer in the previous month regarding the differences between KLG and adoption and said she previously spoke to caseworkers numerous times

8

regarding KLG. She did not feel pressured to adopt and intends to permit defendants to visit the children.

On June 4, 2019, the trial judge issued a written opinion terminating the parental rights of both parents. The judge held the Division proved prongs three and four of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. Under prong three, the judge emphasized the Division's efforts to work with both the mother and the father for years and yet they failed to maintain appropriate housing for their children. Additionally, the judge cited the opinion of Dr. Karen Wells that it is unlikely in the foreseeable future that the mother or the father would be equipped, either emotionally or psychologically, to safely care for their children.

Addressing the second clause of prong three – the alternatives to termination of parental rights – the judge found:

> Both foster parents testified at a remand hearing as to their wishes considering adoption versus KLG. Their testimony was credible and it confirmed that each had discussed the differences between KLG and adoption on many occasions with the Division and each foster parent understood those differences. It was evident that [the maternal great aunt] made an informed and thoughtful decision. She wanted closure for all parties. She was tired of the roller coaster and feared that with KLG she would be brought back and forth into Court by the parents and this would not be good for the children. Significantly, she was concerned that under

> KLG, if something were to happen to her, the children
> would once again be in the system but if she adopted
> she could carefully choose a guardian for the children.
> Her decision to adopt was unconditional, unambiguous
> and unqualified.

The judge noted that the maternal great aunt refuted the claim of the father's expert, Dr. Barry Katz, who previously reported that "she preferred KLG over adoption."

The judge further found that both resource parents believed adoption was the best option for the children to prevent the "back and forth" nature of KLG. The judge concluded the Division met its burden by clear and convincing evidence and "there are no alternatives to termination of parental rights" because the resource parents clearly desire to adopt the children in their care.

Under the fourth prong, the judge found the Division met its burden of proving by clear and convincing evidence that termination of defendants' parental rights, as opposed to KLG, was in the best interest of the children, "who have languished in the foster care system for years." The judge explained,

> The expert testimony of Dr. Wells clearly established
> that any harm to the children . . . can be mitigated
> through therapeutic services and their foster parent.
> Otherwise she testified that none of the . . . children will
> suffer any harm from termination of their parents'
> parental rights. Both foster parents testified that they
> will continue to foster a relationship with the parents.

A-4577-18T2

On June 25, 2019, both M.M. and V.B. filed this appeal, challenging the trial court's decision to terminate their parental rights.

II.

Our scope of review on appeal from an order terminating parental rights is limited. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (citing In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). We will uphold a trial judge's factfindings if they are "supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014) (citing N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). No deference is given to the court's "interpretation of the law" which is reviewed de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012) (citing N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010)).

We accord "deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2014) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of

11

justice." E.P., 196 N.J. at 104 (quoting G.L., 191 N.J. at 605). We also accord deference to the judge's credibility determinations "based upon his or her opportunity to see and hear the witnesses." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88 (App. Div. 2006) (citing Cesare, 154 N.J. at 411-13).

When terminating parental rights, the court focuses on the "best interests of the child standard" and may grant a petition when the four prongs set forth in N.J.S.A. 30:4C-15.1(a) are established by clear and convincing evidence. In re Guardianship of K.H.O., 161 N.J. 337, 347-48 (1999). "The four criteria enumerated in the best interests standard are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." Id. at 348.

N.J.S.A. 30:4C-15.1(a) requires the Division to prove:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

> (3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

The third prong of the best-interests-of-the-child standard, in addition to evaluating the efforts of the Division in providing services to the parents, requires that the court consider alternatives to the termination of parental rights. See N.J.S.A. 30:4C-15.1(a)(3). Under prong three, an alternative to termination is KLG, which allows a relative to become the legal guardian, committed to care for the child until adulthood, without stripping parental rights. N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 508 (2004). KLG resulted from the Legislature's realization "that an increasing number of children who cannot safely reside with their parents are in the care of a relative or family friend who does not wish to adopt the child or children." N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 222-23 (2010). See N.J.S.A. 3B:12A-1(a) to (b).

In P.P., our Supreme Court, while acknowledging the benefits of KLG, emphasized "New Jersey's strong public policy in favor of permanency." 180 N.J. at 510 (quoting In re Guardianship of K.H.O., 161 N.J. 337, 357 (1999)).

The Court explained that KLG is available "as a more permanent option than foster care when adoption 'is neither feasible nor likely' and '[KLG] is in the child's best interests.'" Id. at 512 (quoting N.J.S.A. 3B:12A-6(d)(3) to (4)). But when the permanency provided by adoption is available, KLG cannot be used as a defense to termination of parental rights. N.J. Div. of Youth and Family Servs. v. D.H., 398 N.J. Super. 333, 341 (App. Div. 2008) (holding that KLG is not available when adoption is feasible or likely). Indeed, this court has recognized that when a caretaker "unequivocally" asserts a desire to adopt, the standard to impose a KLG arrangement that adoption is neither feasible nor likely, cannot be satisfied. N.J. Div. of Youth & Family Servs. v. T.I., 423 N.J. Super. 127, 130 (App. Div. 2011).

As we have already held in this case, "The decision of a resource parent to choose adoption over KLG must be an informed one." M.M., 459 N.J. Super. at 260. "The Legislature has made it clear that relative caretakers who might be candidates for KLG must be adequately informed of the nature of such arrangements and the financial and other services for which they may be eligible." Id. at 261.

To accomplish this objective, the Legislature enacted the KLG Notification Act, N.J.S.A. 30:4C-89 to -92, in 2005. The Legislature enacted

the KLG Notification Act "to ensure that individuals who may be eligible to become kinship legal guardians are aware of the eligibility requirements for, and the responsibilities of, kinship legal guardianship and . . . [also] the services available to kinship legal guardians in the State." N.J.S.A. 30:4C-90(e). To accomplish this goal, the Division shall, in easily understandable language:

> a. inform individuals, of whom the department is aware, who may be eligible to become kinship legal guardians of:
>
>> (1) the eligibility requirements for, and the responsibilities of, kinship legal guardianship; and
>>
>> (2) the full-range of services for which kinship legal guardians may be eligible and the eligibility requirements for those services; and
>
> b. inform current kinship legal guardians of the full-range of services for which kinship legal guardians may be eligible and the eligibility requirements for those services.
>
> [N.J.S.A. 30:4C-91.]

As we previously explained in this case,

> A logical implication of the Notification Act is that the caregiver must be fully informed of the potential benefits and burdens of KLG before deciding whether he or she wishes to adopt. Once he or she is provided with that comparative information, the caretaker's preference between the two alternatives should matter. . . . The caregiver's consent to adopt should be

15

> not only informed, but also unconditional, unambiguous, and unqualified.
>
> [M.M., 459 N.J. Super. at 263-64.]

On this appeal, following our remand, the mother and the father both argue the record does not support the trial judge's finding that the decisions of the resource parents to adopt the children in their care were "informed" decisions. We disagree.

At the remand hearing, both resource parents testified for the first time. The maternal grandmother explained she does not like KLG because if something had happened to her, the children would enter back into the system. She wants to adopt the children so she has the ability to choose who could care for the children if something happens to her. Additionally, she wants closure of the entire situation and permanency for the children. The maternal great aunt testified she wants to adopt the children because she wants a more stable environment than KLG. Both resource parents confirmed the Division informed them of the differences between KLG and adoption multiple times and they both want to pursue adoption.

The trial judge reviewed each resource parent's testimony and found they both spoke to the Division regarding KLG and adoption multiple times prior to the remand hearing. The judge found the record showed the resource parents

16

understood the differences between KLG and adoption, and both made an "informed, unconditional, unambiguous, and unqualified" decision to adopt. We agree.

Both resources parents chose to testify at the remand hearing, which resolved the original hearing's evidentiary deficiencies; thus, we find the trial judge's factual findings are supported by substantial credible evidence in the record. R.G., 217 N.J. at 552. The trial judge saw and heard each resource parent's testimony and came to a well-reasoned conclusion. We see no need to disturb the factual findings that the resource parents understood the differences between KLG and their informed intention to adopt was unconditional, unambiguous, and unqualified. M.M., 459 N.J. Super at 264. We conclude the record contains sufficient credible evidence to support the trial judge's finding that the Division established prongs three and four of the "best interests" test with clear and convincing evidence.

Any arguments not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-2(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-4577-18T2