# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1929-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

D.U.,

     Defendant-Appellant,

and

S.I. and G.O.,

     Defendants.

_____

IN THE MATTER OF R.I. and D.I.,

     Minors.

_____

Argued January 7, 2020 – Decided April 28, 2020

Before Judges Fisher, Accurso and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FN-01-0341-16.

Adrienne Marie Kalosieh, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Robyn A. Veasey, Deputy Public Defender, of counsel; Adrienne Kalosieh, on the briefs).

Robert George Amrich, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Robert George Amrich, on the brief).

Meredith Alexis Pollock, Deputy Public Defender, argued the cause for minor R.I. (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, on the statement in lieu of brief).

Todd S. Wilson, Designated Counsel, argued the cause for minor D.I. (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Courtney Elizabeth Lyman, Assistant Deputy Public Defender, on the statement in lieu of brief).

PER CURIAM

Defendant D.U. appeals from a November 26, 2018 fact-finding order, now final, that she abused or neglected her nine-year-old son D.I. (Damen) by excessive corporal punishment, in violation of N.J.S.A. 9:6-8.21(c). Because that conclusion is supported by substantial credible evidence in the record, we

affirm.  See N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010).

School officials made the referral that brought the family to the Division's attention in April 2016.  Over the next few weeks, the Division investigated allegations that defendant and her live-in boyfriend, defendant G.O., beat Damen with a belt and withheld food when his soccer or basketball play was poor.  Defendant denied they physically disciplined her son or his sister R.I. (Rachel), then twelve years old.  Neither defendant nor her boyfriend, however, made any direct response to the claim that they denied the boy food.  Defendant showed the Division worker a picture of Damen showing his muscles and asked whether he "look[ed] hungry."  Defendant's boyfriend told the worker that "starvation is different from missing a meal."

The day after the Division first made contact with the family, the school again called the Division, this time to advise Damen again reported being beaten by both his mother and her boyfriend, that the boyfriend had threatened the boy with a belt after the worker visited his home, and that defendant had advised school officials they were not to counsel the boy.  A little more than a week later, defendant reported Damen missing.  When police found him at a neighbor's home, he claimed his mother's boyfriend had beaten him with a

thick, black belt and he was afraid to go home. Defendant admitted knowing her boyfriend had yelled at Damen, but didn't know whether anything else had occurred. She claimed the boy lied frequently, and she believed he had exaggerated the encounter. Defendant and her boyfriend signed a safety protection plan agreeing that Damen would not be left alone with defendant's boyfriend. Both, however, told the worker the Division should take the nine-year-old to "teach him a lesson."

When defendant refused to have Damen evaluated by the CARES [Child Abuse Research Education and Service] Institute, the Division filed a complaint for care and supervision.[1] On the day before the first court proceeding, Damen refused to go home with his mother, expressing fear that he would be beaten. That pattern would repeat itself several times throughout the pendency of this matter, with Damen's Law Guardian calling the Division on his behalf on more than one occasion to report the boy was afraid to go home.

---

[1] The Division sought care and supervision of only Damen, not Rachel. The children have been represented by separate counsel throughout these proceedings. Defendant, who is no longer in a relationship with her boyfriend, has resumed custody of Damen. The Law Guardians for the children have each taken no position on defendant's appeal.

A-1929-18T1

Damen claimed defendant's boyfriend regularly beat him, once, before the Division's involvement, so badly he couldn't go to school for three days while the swelling subsided. Although the Division's review of school records confirmed the boy was absent as he claimed, defendant maintained the family had been on vacation. While the matter was pending, Damen claimed the boyfriend smacked him in the ear with an open hand. The boy was later discovered to have a ruptured eardrum and an infection. His pediatrician could not say whether the rupture was caused by the infection or having been struck on the ear. Damen claimed his mother would "sometimes" stop her boyfriend from hitting him, but reported she would also sometimes hit him with an open hand. A teacher reported seeing defendant slap Damen during a parent-teacher conference. Rachel told workers that neither defendant nor her boyfriend hit her or her brother.

Following a contested hearing on the Division's order to show cause, during which the court interviewed both children, the judge granted the Division custody, care and supervision of Damen, stating he had never seen a child as scared to go home as Damen was. The court continued custody of Rachel with defendant, but granted the Division care and supervision.

A-1929-18T1

At the fact-finding hearing, the Division presented the testimony of Dr. Martin Finkel, co-director of the CARES Institute and an expert in pediatrics and child abuse, and Dr. Deborah Mulgrew, a physician board certified in adolescent psychiatry. Dr. Finkel testified that the numerous curvilinear marks he observed on Damen's thighs, buttocks and torso were "clearly non-accidental" and consistent with the boy's report of being beaten repeatedly with a belt, primarily by defendant's boyfriend but by his mother as well.

Based on his interview and physical exam, Dr. Finkel opined that Damen suffered from excessive physical discipline inflicted with a belt and was "an extraordinarily frightened, scared young man," afraid to return to his mother and her boyfriend and to express his feelings out of fear of retaliation. Dr. Mulgrew testified that she found Damen, anxious, depressed and extremely frightened about returning home. She testified that Damen never appeared to relax during their interview, and told her he believed the marks from the beatings he received would never go away. Dr. Mulgrew diagnosed Damen as suffering from post-traumatic stress disorder caused by physical abuse.

The judge found the testimony of the Division's experts "trustworthy and credible." He deemed the opinion of defendant's forensic pathologist, who conceded Damen bore scars, but claimed they were not distinctive enough to

6

identify the object that inflicted them, less persuasive. The judge noted the expert never examined Damen, but relied on reports and photographs of the boy's injuries. He found the testimony of defendant's psychologist, who opined that although Damen had suffered mental trauma he did not have PTSD, less credible. The judge noted the psychologist assigned more blame to defendant's boyfriend, but had been forced to concede on cross-examination that he had omitted mention of Damen's statements to him that defendant also hit him with a belt.

The judge rejected defendant's testimony that she never abused or hit Damen as not credible. Although finally admitting she would give Damen "taps of love" on his face to re-focus him, the judge concluded defendant "was clearly hitting" Damen both in the face and with a belt. He found her testimony that the marks on Damen's body were injuries sustained playing soccer and other sports as unworthy of belief. The judge also found defendant "knew or should have known" her boyfriend was hitting Damen with a belt and failed to "appreciate the gravity of the fear and trauma" inflicted on her son. Although acknowledging defendant had complied with all services, that Damen had returned home, and the conditions that led to his placement had been remediated, the judge concluded defendant and her boyfriend had

A-1929-18T1

physically and mentally abused Damen within the meaning of N.J.S.A. 9:6-8.21(c)(4)(b).

Defendant appeals, contending the Division failed to prove she "participated in excessive corporal punishment in disciplining" Damen resulting in physical and emotional impairment. Specifically, defendant argues that the determination that she beat Damen with a belt or was present when her boyfriend did so was not supported by a preponderance of the evidence; that Damen's "statements do not corroborate themselves through repetition"; that "[s]kin marks and temporary emotional upset cannot be deemed 'protracted impairment'"; and that she did not fail to exercise "a minimum degree of care" because she asked Damen about the cause of his distress and he refused to tell her.

We find those arguments, which are premised entirely on alleged errors in the judge's fact finding, utterly without merit. The trial court "has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008). We are not free to overturn the factual findings and legal conclusions of a trial judge "unless we are convinced that they are so

8

manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (citation omitted).

Our review of the trial court's factual findings in this abuse and neglect proceeding is strictly limited to determining whether those findings are supported by adequate, substantial and credible evidence in the record. N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002). Because the trial judge's findings that defendant inflicted excessive corporal punishment on her son have such support in this record, we are bound by them in deciding the appeal. See Rova Farms, 65 N.J. at 484.

We affirm the abuse and neglect finding in this matter substantially for the reasons expressed by Judge W. Todd Miller in his thorough and thoughtful opinion of November 26, 2018.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1929-18T1