# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0361-19T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

G.P.,

     Defendant-Appellant.

_____

IN THE KINSHIP MATTER OF
G.F., a minor.

_____

> Argued November 9, 2020 – Decided  November 19, 2020
>
> Before Judges Fasciale and Mayer.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FL-09-0101-10.
>
> Kimberly A. Burke, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kimberly A. Burke, on the briefs).

Nicholas J. Dolinsky, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Melissa R. Vance, Assistant Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Melissa R. Vance, of counsel and on the brief).

PER CURIAM

Defendant G.P. (the mother) appeals from a September 4, 2019 order denying her motion to vacate kinship legal guardianship (KLG) of her son G.F. (the child) with his uncle, T.W. Judge Radames Velazquez Jr. heard testimony from the child's family members and a Division of Child Protection and Permanency (DCPP) investigator and conducted an in camera interview of the child. He subsequently rendered a comprehensive oral opinion, and entered the order denying the motion to vacate the KLG. The judge determined that the mother did not prove by clear and convincing evidence that vacating the KLG would be in the best interest of the child, which is well-supported by the record. We therefore affirm.

The child was born in 2006 and is currently thirteen years old. He tested positive for heroin at birth and suffered from withdrawal and severe respiratory

2

distress.  After being treated, the child was placed in a facility for medically fragile infants, and subsequently placed in the care of T.W.  When the child was two years old, the mother consented to a KLG with T.W.  In approving the KLG, the KLG court noted "[the mother's] extensive substance abuse history and lack of cooperation with the [DCPP]" regarding her other children.

On appeal, the mother argues:

POINT I

ALTHOUGH THE [JUDGE] PROPERLY DETERMINED THAT [THE MOTHER] PROVED BY CLEAR AND CONVINCING EVIDENCE THAT THE ISSUES OF SUBSTANCE ABUSE AND HOUSING HAD BEEN RESOLVED, [THE JUDGE] ERRED BY DETERMINING THAT IT WAS IN THE BEST INTEREST OF [THE CHILD] THAT THE [KLG] ARRANGEMENT BE AFFIRMED[.]

A. [THE MOTHER] PROVED BY CLEAR AND CONVINCING EVIDENCE THAT SHE HAS RESOLVED THE INCAPACITY THAT LED TO THE AWARD OF [KLG] AND, THEREFORE, [KLG] SHOULD BE VACATED[.]

B. [THE MOTHER] PROVED BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTEREST OF [THE CHILD]  FOR THE [KLG] TO BE VACATED, AS [T.W.] WITHHOLDS VISITS WITH HIS MOTHER FROM [THE CHILD], HAS STATED HE NO LONGER WISHES TO BE RESPONSIBLE

FOR [THE CHILD] AND DOES NOT HAVE
ADEQUATE HOUSING FOR [THE CHILD] [.]

KLG is an alternative to termination of parental rights. N.J. Div. of Child Prot. & Permanency v. M.M., 459 N.J. Super. 246, 259 (App. Div. 2019) The Kinship Legal Guardian Act, N.J.S.A. 3B:12A-1 to -7, was enacted because "the Legislature recognized that an increasing number of children who cannot safely reside with their parents are in the care of a relative or a family friend who does not wish to adopt the child or children." N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 222-23 (2010). The State "s[ought] to add another alternative, permanent placement option, beyond custody, without rising to the level of termination of parental rights, for caregivers in relationships where adoption is neither feasible nor likely[.]" M.M., 459 N.J. Super. at 259 (second alteration in original) (quoting N.J.S.A. 3B:12A-1(c)).

Our review of a family judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1988). This is because the family judge "ha[d] the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; [and] has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2010) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)). We will not disturb the family judge's findings of fact unless they are "so wide of

the mark that the judge was clearly mistaken." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188-89 (App. Div. 1993)).

KLG may be vacated if "based upon clear and convincing evidence, the [judge] finds that the parental incapacity or inability to care for the child that led to the original award of [KLG] is no longer the case and termination of [KLG] is in the child's best interests." L.L., 201 N.J. at 224 (quoting N.J.S.A. 3B:12A-6(f)). Under N.J.A.C. 3A:20-3.6(a) DCPP considers nine factors "related to the child's safety when determining whether to take a position on a motion to vacate a [KLG] order[,]" which include:

> 1. The child's age;
>
> 2. The duration of [DCPP's] involvement with the child, prior to the granting of [KLG];
>
> 3. The total length of time the child was in out-of-home placement;
>
> 4. The length of time the child has lived with the guardian, prior to and after the granting of [KLG];
>
> 5. When [KLG] was granted;
>
> 6. What the original harm or risk of harm to the child was;
>
> 7. The parent's present fitness to care for the child;

5

8. Any subsequent allegations of abuse or neglect received by the [DCPP] and their findings; and

9. What plan is proposed for the child if the guardianship is vacated.

[N.J.A.C. 3A:20-3.6(a)(1)-(9).]

The court utilizes these factors in its analysis, but this list of factors is not exhaustive. L.L., 201 N.J. at 228. The judge should also consider

the child's wishes; the nature and quality of the parent-child relationship during the [KLG]; the future relationship anticipated between the child and the guardian; the preservation of sibling relationships; the practical impact of vacating the [KLG] on the child's day-to-day life (i.e. changes in school, community and friends); and any other relevant factors bearing on the best interests of the child.

[Ibid.]

Not all factors will be applicable to every case, but the judge "must consider an array of relevant factors in determining whether vacating the [KLG] is in the best interest of the child." Ibid.

Here, the judge considered the child's age, the length of time the child has lived with T.W., when the KLG was granted, the mother's present fitness to care for the child, the child's wishes, and the practical impact of vacating the KLG on the child's day-to-day life. The judge afforded significant weight to the child's preference that he remain with T.W. The child told the judge during the

in camera hearing that he "want[ed] [his] mom to understand that [he's] in a very good environment" and that she "should know that the right place for [him] is [with his] uncle[.]" The child also told the judge that he was "not so comfortable with the thought of [moving] to Jersey City" because he was concerned about that environment. And although the mother told the judge that she was planning on moving to a "better place" within Jersey City, the judge expressed concern because she had not yet done so.

The judge found—consistent with DCPP's investigation—that there existed no concerns about corporal punishment while the child was with T.W. The judge noted that since the reported incidents leading to the child leaving T.W.'s home, which were often as a result of being punished and not being permitted to spend time with friends, "there's been no indication that it's been nothing but a very stable and good placement and place for him to be. And the child has acknowledged that." The judge also noted that although the mother raised concerns about the child showering at T.W.'s home, the child explained that there was never inappropriate touching involved, and T.W. was ensuring that the child adhered to proper hygiene because the child did not like showering or bathing.

A-0361-19T1

The judge also expressed his concerns regarding some of the mother's behaviors during the KLG. The judge considered it a "red flag" when she did not attend a scheduled bonding evaluation, and stressed that the evaluations are important to "getting to a place where everybody agrees, whether it's a child going back to [the mother] at some point or whether getting the child some therapy with [the mother.]" The judge was also concerned with the mother's response to issues that arose while trying to coordinate transportation for the child with T.W., where she testified that she was "not going to help somebody that's not helping [her]." The judge found this reaction concerning because "there is more than [the mother] involved. There's a child who wants to continue to build a relationship with his mother[.]" And finally, the judge expressed concern that the mother "may be in a position that [she] wants her child back so badly that [she] may do things that jeopardize the stability and placement that he has today."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0361-19T1